**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KERRY HANIFIN, on behalf of himself, and all others similarly situated,<br><br>                  Plaintiff,<br>   v.<br><br>ACCURATE INVENTORY AND CALCULATING SERVICE, INC. d/b/a QUANTUM SERVICES<br><br>                  Defendant. | 11 Civ. 1510 (MAD) (ATB) |

**ORDER GRANTING PLAINTIFF'S MOTIONS FOR
(1) CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE
CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT;
(2) APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES;
<u>(3) APPROVAL OF SERVICE AWARDS</u>**

Plaintiff Kerry Hanifin is a former employee of Defendant Accurate Inventory and Calculating Service, Inc. d/b/a/ Quantum Services ("Quantum"). On December 22, 2011, Plaintiff filed a Class Action Complaint ("Complaint") on behalf of former and current Auditors and Audit Supervisors (collectively, "Class Members") employed by Quantum in the United States, alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") by (1) failing to pay Class Members for all hours worked; (2) failing to pay Class Members for time spent traveling to and from designated meet-up sites; (3) failing to reimburse Class Members for business expenses. ECF No. 1, Compl. ¶¶ 1-2.

After engaging in formal discovery and extensive settlement discussions, the Parties reached a settlement totaling $650,000.00. Decl. of Adam T. Klein in Supp. of Pls.' Mot. for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and

Approval of the FLSA Settlement ("Klein Decl.") ¶¶ 11-29, 33. The Parties reached this settlement after private mediation with mediator Bob Kaiser, a settlement conference before Magistrate Judge Andrew T. Baxter, and further settlement negotiations between counsel. *Id.* ¶ 20-27.

On May 14, 2014, this Court entered an Order preliminarily approving the settlement on behalf of the class set forth therein, conditionally certifying the settlement class, appointing Outten & Golden LLP ("O&G") and Schneider Wallace Cottrell Konecky LLP ("SWCK") as Class Counsel, and authorizing notice to all Class Members. ECF No. 110.

On June 13, 2014, a claims administrator sent Court-approved notices to all Class Members informing them of their rights under the settlement, including the right to opt out or object to the settlement. Decl. of Terry Sutor ("Sutor Decl.") ¶ 7. No Class Member objected to the settlement, and no Class Member opted out of the settlement. *Id.* ¶¶ 9-10.

On August 4, 2014, Plaintiff filed a Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"). That same day, Plaintiff also filed Motions for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Service Awards ("Motion for Service Awards"). Defendant took no position with respect to any of these motions and did not object to the requests for attorneys' fees, costs, or service payments.

The Court held a fairness hearing on August 18, 2014. No Class Member objected to the settlement at the hearing.

Having considered the Motion for Final Approval, the Motion for Attorneys' Fees and Reimbursement of Expenses, the Motion for Service Awards, and the supporting declarations, the oral argument presented at the August 18, 2014 fairness hearing, and the complete record in

this matter, for the reasons set forth therein and stated on the record at the August 18, 2014 fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

**CERTIFICATION OF THE SETTLEMENT CLASS**

1. The Court certifies the following Class under Federal Rule of Civil Procedure 23(e), for settlement purposes (the "Rule 23 Class Members"): all current and former Auditors and Audit Supervisors employed by Defendant in New York State at any time between December 22, 2005 and August 5, 2013.

2. Plaintiff meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3).

3. Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(1) because there are approximately 97 Rule 23 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members. . . .").

4. This case involves several common factual and legal issues, including whether Defendant: (1) required workers to work off the clock; (2) was obligated to pay Class Members for time spent traveling to and from audit sites and meet-up sites; (3) took unlawful deductions from employees' wages by requiring them to pay Defendant's business expenses. These alleged wage and hour violations – involving common operative facts stemming from corporate policies that affected Class Members in the same way – are sufficient to meet Rule 23(a)'s commonality factor. *See Capsolas v. Pasta Res. Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *2 (S.D.N.Y. Oct. 5, 2012) (finding commonality where defendants "allegedly us[ed] the equivalent of 4–5% of each shift's wine sales to pay sommeliers' salaries and [failed] to pay spread-of-hours pay.");

*Campos v. Goode*, No. 10 Civ. 0224, 2010 WL 5508100, at *1-2 (S.D.N.Y. Nov. 29, 2010) (commonality satisfied where restaurant workers raised overtime, tip misappropriation, spread of hours, and uniform claims); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 00440, 2010 WL 2399345, at *1 (S.D.N.Y. Apr. 19, 2010) (commonality satisfied where restaurant workers *inter alia* raised tip misappropriation, spread of hours, and uniform claims).

5. Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(3), typicality, because Plaintiff's wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2013 WL 1209563, at *3 (S.D.N.Y. Mar. 21, 2013) (typicality satisfied where "[p]laintiffs' [overtime claims] claims arose from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same).

6. Plaintiff satisfies Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that the Plaintiff's and Class Members' interests are at odds. *See Beckman*, 293 F.R.D. at 473 (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *accord Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010).

7. In addition, Plaintiff's Counsel also meet the adequacy requirement of Rule 23(a)(4). Outten & Golden attorneys have "substantial experience prosecuting and settling employment class actions, including wage and hour class actions[,] and are well-versed in wage and hour law and class action law." *Beckman*, 293 F.R.D. at 473 (internal quotation marks and citation omitted). Likewise, SWCK is "well-qualified to represent Plaintiffs' interests in this action" due to their "extensive experience with class actions." *Wren v. RGIS Inventory Specialists*, No. 06 Civ. 5778, 2011 WL 1230826, at *9-10 (N.D. Cal. Apr. 1, 2011).

8. Plaintiff also satisfies Rule 23(b)(3). Plaintiff's and Class Members' common factual allegations and legal theory – that Defendant violated federal and state wage and hour laws by failing to pay them for all compensable time and failing to properly reimburse them for expenses – predominate over any factual or legal variations among Class Members. *See Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371, 2013 WL 6144764, at *7 (S.D.N.Y. Nov. 18, 2013) (predominance satisfied where workers brought claims for off-the-clock work and unlawful deductions); *Morris*, 859 F. Supp. 2d at 615, 617 (predominance satisfied in case alleging that defendant did not pay workers for time spent working off the clock).

9. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Beckman*, 293 F.R.D. at 473; *Morris*, 859 F. Supp. 2d at 617. Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.

**APPROVAL OF THE SETTLEMENT AGREEMENT**

10. The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement.

11. Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the "negotiating process leading to the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated*

on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

12. Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions.").

13. A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks and citation omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### *Procedural Fairness*

14. The proposed settlement is procedurally fair because it was reached through vigorous, arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation . . . [and] enlisted the services of an experienced employment [law] mediator"); *Diaz*, 2010 WL 5507912, at *4.

15. Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in discovery, and reached a settlement after private mediation between the Parties and a settlement conference before Magistrate Judge Andrew T. Baxter. Klein Decl. ¶¶

11-27.

16. On August 21, 2013, the Parties attended private mediation in Columbus, Ohio. *Id.* ¶ 24. Although the parties did not reach a resolution at this time, these arm's-length negotiations involved counsel and a mediator well-versed in wage and hour law, "rais[ing] a presumption that the settlement they achieved meets the requirements of due process." *See Wal-Mart Stores*, 396 F.3d at 116; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713, 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010).

17. On July 12, 2013, the parties attended a settlement conference before Magistrate Judge Andrew T. Baxter. Klein Decl. ¶ 26. The involvement of a magistrate judge also supports a finding that the settlement was procedurally fair. *See Elliot v. Leatherstocking Corp.*, No. 10 Civ. 934, 2012 WL 6024572, at *3 (N.D.N.Y. Dec. 4, 2012).

18. In addition, "courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Yuzary*, 2013 WL 5492998, at *5; *see also Hernandez*, 2013 WL 1209563, at *1 (endorsing early settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *10 (S.D.N.Y. Jun. 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement). The Parties here acted responsibly in reaching an early settlement. *See In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004).

### *Substantive Fairness*

19. The settlement is substantively fair. All of the factors set forth in *Grinnell*, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

20. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

21. Litigation through trial would be complex, expensive and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

22. The class's reaction to the settlement was positive. The Notices sent to Class Members included an explanation of the allocation formula and an estimate of each Class Member's award. The Rule 23 Notice also informed Rule 23 Class Members of their right to object to or exclude themselves from the Settlement and explained how to do so. No Class Member objected to the settlement, and no Class Member opted out. This favorable response demonstrates that the class approves of the settlement, which further supports final approval. *See Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where seven of 2,025 class members objected and two requested exclusion); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207, 2010 WL 3119374, at * 3 (S.D.N.Y. Aug. 6, 2010) (granting final approval where there were no objections but 28 of 5,262 opted out, noting that "[a] small number of objections is convincing evidence of strong support by class members"); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *5 (E.D.N.Y. Jan. 20, 2010) (approving settlement where no class members objected and two opted out).

23. The Parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). Defendant deposed Plaintiff Kerry Hanifin and responded to Plaintiff's document requests by producing hundreds of pages of corporate policy documents. Klein Decl. ¶¶ 16, 18. Defendant further provided extensive class member data relevant to damages, including dates of employment, hours of work, hours spent driving between audit sites, hours reported under specific administrative reporting codes, and miles traveled to, from, and between audit sites, as well as data showing how often each Class Member worked as a supervisor or rode as a passenger in another Class Member's car. *Id.* ¶ 20. Plaintiff's Counsel analyzed this information and created formulas to calculate the damages Defendant owed Plaintiff and the Class Members for each claim. *Id.* ¶ 22. In addition to reviewing these documents and those provided by Plaintiff, Plaintiff's Counsel also conducted legal research on the underlying merits of Plaintiff's and Class Members' claims and the damages to which they were entitled. *Id.* ¶ 12, 23. Plaintiff's Counsel met and conferred with Defendant's counsel multiple times regarding the data available for damages calculations. *Id.* ¶ 21.

24. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiff faced risks as to both liability and damages. For example, Plaintiff would have to overcome Quantum's defense that

Class Members accurately reported all their time worked using Defendant's timekeeping system, prove that the time Class Members spent traveling to and from meeting sites was compensable, and overcome Quantum's good faith defense. Litigation of these issues would be inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

25. The risk of obtaining collective and class certification and maintaining both through trial is also present. A contested class certification motion would likely require extensive discovery and briefing. Defendant would likely seek to decertify the FLSA collective after the close of discovery. If the Court were to grant class certification, Defendant might seek to file an appeal under Federal Rule of Civil Procedure 23(f), the resolution of which would require an additional round of briefing. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The sixth *Grinnell* factor weighs in favor of final approval.

26. Even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Here, Quantum informed Plaintiff's counsel during mediation that it would have difficulty sustaining a greater judgment, and offered to disclose financial information in support of that claim. Klein Decl. ¶ 29. Therefore, the seventh *Grinnell* factor supports final approval.

27. The substantial amount of the settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and

the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The eighth and ninth *Grinnell* factors weigh in favor of final approval.

## **APPROVAL OF THE FLSA SETTLEMENT**

28. The Court hereby approves the FLSA settlement.

29. Because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *see also McMahon*, 2010 WL 2399328, at *6. Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

30. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982); *McMahon*, 2010 WL 2399328, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *McMahon*, 2010 WL 2399328, at *6.

31. In this case, the settlement was the result of arm's-length negotiation involving vigorous arm's-length settlement negotiations. Klein Decl. ¶ 28. During the entire process, Plaintiff and Defendant were represented by counsel experienced in wage and hour law. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances

supporting a finding that is fair and reasonable.

32. The parties have stipulated to designate the National Employment Law Project ("NELP") as the *cy pres* beneficiary for this settlement. Klein Decl. ¶ 47. NELP is an appropriate *cy pres* beneficiary because its advocacy work on behalf of workers is closely related to the purpose of this wage and hour lawsuit. *Id*. ¶ 48-49; *see Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2013 WL 1316015, at *2 (S.D.N.Y. Mar. 29, 2013); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720, 2011 WL 7051093, at *2 (W.D.N.Y. Dec. 15, 2011) (collecting cases); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2010 WL 2545859, at *1 (S.D.N.Y. June 18, 2010).

**DISSEMINATION OF NOTICE**

33. Pursuant to the Preliminary Approval Order, the Rule 23 and FLSA Notices were sent by first-class mail to each respective Class Member at his or her last known address (with re-mailing of returned Notices for which new addresses could be located). The Court finds that the Rule 23 and FLSA Notices fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Rule 23 Class Member to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on August 18, 2014. Class Members were provided with the best notice practicable under the circumstances.

34. The Court further finds that the Notices and their distribution comported with all constitutional requirements, including those of due process.

35. The Court confirms Heffler Claims Group as the claims administrator.

**AWARD OF FEES AND COSTS TO CLASS COUNSEL AND AWARD OF SERVICE AWARDS TO PLAINTIFFS**

36. On May 15, 2014, the Court appointed O&G and SWCK as Class Counsel because they met all of the requirements of Federal Rule of Civil Procedure 23(g). *See*

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class.") (internal quotation marks omitted).

37. Class Counsel are experienced employment lawyers with good reputations among the employment law bar. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012) (noting Outten & Golden LLP's reputation as a "respected labor and employment firm" and that attorneys had "prosecuted and favorably settled many employment law class actions, including wage and hour class actions"); *Wren v. RGIS Inventory Specialists*, No. 06 Civ. 5778, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) (approving settlement of claims by class represented by Schneider Wallace Cottrell Konecky LLP).

38. The work that Class Counsel has performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel have committed substantial resources to prosecuting this case.

39. The Court hereby grants Plaintiff's Motion for Attorneys' Fees and awards Class Counsel $200,000.00, which is approximately 30.8% of the settlement fund.

40. The trend in this Circuit is to use the percentage of the fund method in common fund cases like this one, *Wal-Mart Stores*, 396 F.3d at 121; *Yuzary*, 2013 WL 5492998, at *9; *Diaz*, 2010 WL 5507912, at *7.

41. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010), in wage and hour class action lawsuits, public policy favors a common

fund attorneys' fee award, *Beckman*, 293 F.R.D. 477; *McMahon*, 2010 WL 2399328, at *7. "Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Hernandez*, 2013 WL 1209563, at *8 (internal quotation marks and citation omitted). The FLSA and NYLL statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3.

42. Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Beckman*, 293 F.R.D. 477; *see also Hernandez*, 2013 WL 1209563, at *8. "If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Id.*; *see Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected.").

41. Class Counsel's request for 30.8% of the Fund is reasonable and "consistent with the norms of class litigation in this circuit." *Yuzary*, 2013 WL 5492998, at *10 (internal quotation marks and citation omitted).

42. In addition, in Plaintiff's retainer agreements with Class Counsel, Plaintiff agreed that Class Counsel could apply to the Court for up to 33 1/3% of a class-wide recovery and that they would pay Class Counsel 33 1/3% of any individual recovery. Klein Decl. ¶ 43. This also provides support for Class Counsel's request for 30.8% of the fund.

43. No Class Member objected to Class Counsel's request for 30.8% of the fund,

which also provides support for Class Counsel's fee request.

44. All of the factors in *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000) weigh in favor of the requested fee award.

45. Applying the lodestar method as a "cross check," *see id.* at 50, the Court finds that the fee that Class Counsel seeks is reasonable. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 293 F.R.D. 481 (citations omitted); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 19.6 times lodestar); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six." (citations omitted)); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit" (citation omitted)); s*ee, e.g.*, Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed") (citations omitted); *Yuzary*, 2013 WL 5492998, at *11 (awarding multiplier of 7.6 in wage and hour misclassification class action); *Davis*, 827 F. Supp. 2d at 185-86 (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multiplier of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of 6); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding

multiplier of 6.96); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1, 169 (S.D.N.Y. 1991) (awarding multiplier of 8.74). The Court has considered the hourly rates and hours expended by Class Counsel in this matter and finds them reasonable. Based on such rates and hours, Class Counsel are seeking an award that is approximately 34.4% of their lodestar. This compares favorably with the range of multipliers that have been granted by courts in this Circuit and elsewhere.

46. The fee award Class Counsel seeks is also reasonable because it will compensate them for further time spent on this case in the future. In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with defendants about administering the settlement and distributing the fund. Klein Decl. ¶ 44. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request. *See Diaz*, 2010 WL 5507912, at *7.

47. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $37,367.24. Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003). Here, Class Counsel's unreimbursed expenses include court fees, postage and courier fees, transportation, photocopies, electronic research, document management fees, messenger and process server fees, and Plaintiff's share of the mediator's fees

48. The attorneys' fees and the amount in reimbursement of litigation costs and

expenses shall be paid from the settlement fund.

49. The Court finds reasonable a service award for Plaintiff Kerry Hanifin in the amount of $10,000 in recognition of the services he rendered on behalf of the class. This amount shall be paid from the settlement fund.

50. Service awards are common in class action cases and serve to "compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Yuzary*, 2013 WL 5492998, at *12 (quoting *McMahon*, 2010 WL 2399328, at *9) (internal quotation marks omitted). "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Yuzary*, 2013 WL 5492998, at *12 (citing *Massiah v. MetroPlus Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).

51. The "Effective Date" of the settlement shall be the last of the following dates:

   a. If there is no appeal of the Court's Order Granting Final Approval of the settlement, 30 days following the Court's Order Granting Final Approval; or

   b. If the Court's Order Granting Final Approval of the settlement is appealed, the date of the Court's entry of a final order and judgment following any resolution of all appeals in favor of final approval.

52. Within five days of the Effective Date, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

   a. Paying Class Counsel 30.8% of the fund ($200,000.00);

   b. Reimbursing Class Counsel $37,367.24 in litigation costs and expenses;

   c. Paying a service award to Plaintiff Kerry Hanifin in the amount of $10,000 in recognition of the services he rendered on behalf of the class. This amount shall be paid from the settlement fund; and

   d. Paying the remainder of the fund to Class Members in accordance with the

allocation plan described in the Settlement Agreement.

53. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement and overseeing the distribution of settlement funds. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

54. Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Rule 23 Class Members who have not excluded themselves from the settlement and all FLSA Class Members who have opted in to the lawsuit shall be permanently enjoined from pursuing and/or seeking to reopen claims that have been released pursuant to the settlement.

It is so ORDERED this 20th day of August, 2014.

_____
Mae A. D'Agostino
U.S. District Judge